UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| Joseph Brown, | : | |
| :--- | :--- | :--- |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:08-CV-201 |
| | : | |
| Joshua Catella, Matthew | : | |
| Birmingham, Trevor Carbo, | : | |
| and John O'Connor, | : | |
| Defendants. | : | |

OPINION AND ORDER
(Papers 15, 17, 18, 23 and 24)

Plaintiff Joseph Brown, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983. Brown claims that while being arrested in 2006, he was subjected to threats, verbal harassment and abuse by the arresting officers. He also claims that defendant Joshua Catella made false statements in an affidavit.

Pending before the Court are a series of motions, including motions to dismiss filed by defendants Catella and Birmingham. Defendants Carbo and O'Connor do not appear to have been served, although service efforts are underway. Subsequent to the motions to dismiss, Brown moved for default judgment or, in the alternative, a continuance of this case until after his criminal trial concludes. Sentencing in the criminal case is scheduled for May 18, 2009.

For the reasons set forth below, the motions to dismiss are GRANTED with partial leave to amend. The motion for a continuance is DENIED. Other pending motions are also resolved below.

## Factual Background

For the limited purpose of addressing the pending motions, the facts alleged in the complaint will be accepted as true. At approximately 4:00 p.m. on July 28, 2006, four members of the Vermont Drug Enforcement Task Force ("VTDF") arrested Brown in a parking lot in Barre, Vermont. The complaint claims that "[m]embers of the VDTF team rushed plaintiff's vehicle with their guns drawn wearing black uniforms while donning masks that hid their facial identities . . . ." In "the heat of plaintiff's arrest," Brown was allegedly "called a 'nigger' by one of the arresting officers." The officer also called him "an 'asshole'" and made reference to having "his 'f-ing' brains blown out." Brown further alleges that he "received minor cuts and abrasions as a result of being thrown out of his vehicle at gunpoint." (Paper 5 at 3-4).

Brown suspects that it was defendant O'Connor who made the offensive statements. He bases his suspicion upon O'Connor's alleged history of "misconduct allegations of racial profiling charges and allegations of racial discrimination towards African-Americans . . . ." Id. at 6. Defendants Catella and Birmingham

2

are named as VTDF supervisors, while defendant Carbo, an agent with the Drug Enforcement Agency ("DEA"), is accused of failing "to set up policies to help guide subordinates' conduct so that violations of plaintiff's constitutional and statutory rights did not occur as they did." Id. at 5. Because the arresting officers were all masked at the time of the arrest, the complaint leaves open the possibility that any of them could have uttered the offensive and abusive statements.

Brown's next claim is that subsequent to the arrest, defendant Catella filed an affidavit containing false information. Specifically, Catella is alleged to have "falsely described plaintiff as having two prior felony drug convictions in the State of New York." Id. at 7. At a suppression hearing in 2007, Catella conceded that the information in the affidavit was incorrect.

Brown's criminal case went to trial on February 17, 2009. United States v. Lavandier, et al., File No. 2:06-CR-82. On February 18, 2009, he entered into a Plea Agreement with the government and pled guilty to one count of possession with intent to distribute cocaine. Sentencing is currently scheduled for May 18, 2009.

Discussion

I.  Motions Submitted by Another John O'Connor

The first motions before the Court are submitted by a person named John O'Connor, but apparently not the John O'Connor who was involved in Brown's arrest. The movant, a South Burlington police officer, has submitted an affidavit explaining that he was not present at Brown's arrest, and that there is a DEA agent with the same name. (Paper 18-2). Because this appears to be simply a matter of mistaken identity, the non-defendant O'Connor's unopposed motions to quash his subpoena (Paper 15) and for summary judgment in his favor (Paper 18) are GRANTED.

II. Motions to Dismiss

Defendants Catella and Birmingham have each moved to dismiss the complaint for failure to state a valid constitutional claim. On a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in Brown's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). The complaint's allegations, however, "must be enough to raise a right of relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). Thus, Brown must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. This "flexible 'plausibility standard,' . . . obliges a pleader to amplify a claim with some factual

allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original and quoting Twombly, 127 S. Ct. at 1968). If Brown "[has] not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 127 S. Ct. at 1974. Because Brown is proceeding *pro se,* the Court must construe his pleadings liberally, and read them "to raise the strongest arguments they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).

    A.   <u>Statements During Arrest - Supervisor Liability</u>

A fair reading of the complaint is that defendants Catella and Birmingham were supervisors, and that a member of their team uttered several offensive and threatening statements.[1] Indeed, the complaint alleges that defendant O'Connor, whose employment history allegedly includes "racial profiling charges and . . . racial discrimination towards African-Americans," was the most likely culprit. (Paper 5 at 6). Accepting the facts alleged in the complaint as true, the allegations against Catella and Birmingham as supervisors fail to meet the standard for unconstitutional conduct.

---

[1] The Court will consider below whether Catella and/or Birmingham are entitled to dismissal if they were, in fact, the ones who made the alleged statements.

5

In order to hold a supervisor liable under § 1983, a plaintiff must show that the defendant: 1) directly participated in the challenged conduct; 2) failed to remedy the violation after learning of it through a report or appeal; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinate who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. <u>Iqbal</u>, 490 F.3d 152-53. Here, construing Brown's claims against the movants as supervisory only, there is no allegation of direct involvement. Nor does Brown allege that Catella and Birmingham developed policies allowing unconstitutional conduct.

The crux of Brown's claim is that Catella and Birmingham knew of O'Connor's past alleged behavior, and failed to "remedy it, to investigate it, and to correct it, preventing it from happening or reocurring [sic] again." <u>Id.</u> He further suggests that "more or better training, supervision or discipline is needed." <u>Id.</u> Although Brown makes reference to deliberate indifference and gross negligence, he does not offer any specific facts to support or "amplify" these allegations beyond general knowledge of O'Connor's alleged history. <u>Iqbal</u>, 490 F.3d at 157-58. Also, Brown does not offer any facts to show that

Catella or Birmingham, as heads of the VTDF team that day, were responsible for O'Connor's training.

Conclusory allegations that supervisors failed to train or properly monitor the actions of a subordinate employee may not suffice to establish the requisite personal involvement and support a finding of liability. See Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (citing Iqbal, 490 F.3d at 166, for proposition that "additional allegations of personal involvement may be required to avoid dismissal if a plaintiff's conclusory allegations of personal involvement are not 'plausible, without allegations of additional subsidiary facts'"). Moreover, the law in this Circuit is that a plaintiff must allege sufficient facts to indicate that a supervisor knew or should have known there was a "high degree of risk" that his subordinate would behave inappropriately, and either deliberately or recklessly disregarded that risk. Poe v. Leonard, 282 F.3d 123, 142 (2d Cir. 2002).

Brown's claim is that Catella and Birmingham should have had more control over the agent who, in the "heat of the arrest," uttered offensive and threatening words. The claim is not that they actively permitted such conduct, or that they knew with the required level of certainty that the officer in question would act as he did. Brown's conclusory allegations of deliberate

7

indifference are insufficient, and the motions to dismiss are GRANTED.

When addressing a *pro se* complaint, however, district courts generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000). Here, Brown's claims fall short of alleging supervisor liability, but nonetheless indicate that, with additional factual support, he may have a valid claim. The Court therefore grants him leave to amend this claim according to the parameters set forth in the Conclusion section below.

    B.  <u>Statements During Arrest – Direct Involvement</u>

Giving the complaint the required liberal reading, Brown may instead be claiming that Catella or Birmingham made the offensive statements in question. As discussed above, the fact that each of the defendants was masked raises the potential for such a claim notwithstanding all of Brown's allegations about Catella and Birmingham being supervisors. Accepting Brown's factual allegations as true, however, the case law again weighs in favor of the defendants.

With respect to the alleged use of a racial epithet and abusive language during the arrest, courts have repeatedly held that such conduct does not violate the arrestee's constitutional

8

rights. See, e.g., Miro v. City of New York, 2002 WL 1163580, at *5 (S.D.N.Y. June 3, 2002) ("An arresting officer's use of racial epithets does not constitute a basis for a § 1983 claim."); Harris v. Keane, 962 F. Supp. 397, 406 (S.D.N.Y. 1997) (citing Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) for proposition that name calling by prison guard does not allege a constitutional violation); Keyes v. City of Albany, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984). "Only in rare circumstances in which the threats involved were 'inspired by malice rather than merely careless or unwise zeal so that [they] amount to an abuse of official power that shocks the conscience' have courts recognized exceptions to this rule." Mroz v. City of Tonawanda, 999 F. Supp. 436, 465 (W.D.N.Y. 1998) (quoting Beal v. City of New York, 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994)) see also Hopson v. Fredericksen, 961 F.2d 1374, 1378-79 (8th Cir. 1992) (verbal threats do not amount to constitutional violations unless they rise to the level of a "brutal and wanton act of cruelty").

In this case, there is no suggestion in the complaint that either Catella or Birmingham acted with malice toward Brown. While Brown attributes racist motives to O'Connor, he ascribes no such animus to the supervisory defendants. Without such an allegation, "the use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim." Keyes, 549 F. Supp. at 1155.

9

In addition, several courts have rejected claims such as Brown's in the absence of associated physical harm. See, e.g., Brown v. Croce, 967 F. Supp. 101, 104 (S.D.N.Y. 1997) (racial slur and two slaps to face did not violate constitutional rights); cf. McCann v. Coughlin, 698 F.2d 112, 126 (2d Cir. 1983) (claim that prison guard called plaintiff names did not allege any appreciable injury and was properly dismissed). Brown admits in his complaint that his injuries were minor, and that they were the result of his removal from a vehicle by police. This type of incidental injury, even when linked to the alleged racial and threatening statements, does not suggest malice or "shock the conscience" such that the Court can find a valid claim. Cf. Williams v. City of New York, 2007 WL 2214390, at *12 (S.D.N.Y. July 26, 2007) (characterizing similar injuries as "de minimis"). The motions to dismiss Brown's claims against Catella and Birmingham for their respective roles in his arrest are, therefore, GRANTED.

Again, Brown may be able to allege additional facts to bolster his claim. Because the facts currently alleged indicate that a viable claim might be stated, Brown is granted leave to amend this claim as well. Cuoco, 222 F.3d at 112.

C. False Affidavit

Brown also claims that Catella filed a false affidavit. This act, he argues, constituted perjury in violation of 18

10

U.S.C. § 1621, and violated his due process and equal protection rights under the Fifth and Fourteenth Amendments, respectively. As noted above, Catella admitted his error during a suppression hearing.

Beginning with Brown's statutory claim, 18 U.S.C. § 1621 is a criminal statute and does not provide a private cause of action. See Ippolito v. Meisel, 958 F. Supp. 155, 167 (S.D.N.Y. 1997). As to his constitutional claims, Brown alleges that "harm was done" but fails to allege the nature of such harm beyond vague references to due process and equal protection. (Paper 5 at 7). Indeed, in Brown's criminal case, Judge Sessions concluded that Catella's affidavit caused Brown no harm whatsoever.

> [E]ven if the assertion that Brown had two prior felony drug convictions was a deliberate lie, Brown cannot show that he was prejudiced by the receipt of the incorrect information . . . .
>
> With the incorrect information deleted, the remaining facts supplied in the complaint established probable cause for Brown's arrest. And even had the complaint been rendered fatally defective, Brown's subsequent indictment would not have been effected . . . .

United States v. Brown, 2008 WL 2064629, at *5 (D. Vt. May 13, 2008). Consequently, if Brown is claiming that the affidavit resulted in an arrest that lacked probable cause, the claim is without merit.

One of Brown's few specific references to an injury is his "belie[f] [that] this falsely written affidavit may have been

11

potentially instrumental in keeping him detained as charge [sic] and prevented him from receiving any pre-trial consideration for release." (Paper 5 at 7). Judge Sessions resolved this issue as well, finding that

> [a]lthough Brown argues that the information caused him to be held without bail, he is mistaken. As discussed above, Brown's detention order was based on information supplied by Pretrial Services and his lack of opposition to the motion. The Pretrial Services report showed that Brown did not have any felony drug convictions.

Brown, 2008 WL 2064629, at *5.

Even assuming injury, Brown's recent guilty plea bars him from challenging the constitutionality of the previous proceedings. The Supreme Court has held that:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also Maietta v. Artuz, 84 F.3d 100, 103 n.1 (2d Cir. 1996) (plaintiff cannot establish false arrest or malicious prosecution claim under § 1983 if he pleads guilty to offense for which he was arrested); Carmona v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1986) ("Where the civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and

12

reasonableness of the officer's belief in the lawfulness of the arrest.").

Finally, while a lack of probable cause for an arrest does not give rise to a substantive due process claim, Albright v. Oliver, 510 U.S. 266, 275 (1994), Brown offers no factual support whatsoever for an equal protection claim. See Skehan v. Village of Mamaroneck, 465 F.3d 96, 110 (2d Cir. 2006) (equal protection claim requires showing that plaintiff was treated differently from similarly-situated individuals); see also Berger v. Schmitt, 2003 WL 21383007, at *4 (W.D.N.Y. Apr. 18 2003) ("[Plaintiff's] equal protection claim fails . . . [because] courts will not examine an officer's motivation for making an arrest where probable cause exists.") (citation omitted). Catella's motion to dismiss with respect to his affidavit is, therefore, GRANTED, and because the claim lacks legal merit, leave to amend is DENIED. See Cuoco, 222 F.3d at 112.

III. Motion for Default Judgment or Continuance

Brown has filed a motion for default judgment, claiming that the defendants failed to respond to the complaint in a timely manner. The motion states that Brown mailed an affidavit in support of default judgment to the defendants on November 4, 2008. At that time, however, none of the defendants had been served. Consequently, there was no basis for claiming a default.

Brown also asserts that defendant Trevor Carbo has not responded to the complaint, and that a default judgment is warranted. As noted above, however, the docket does not indicate successful service on Carbo in either his individual or official capacities. The motion for default judgment is, therefore, DENIED.

As an alternative to a default judgment, Brown seeks a continuance of this case until after his criminal case has concluded. When Brown filed his motion on February 6, 2009, he was undoubtedly anticipating his criminal trial. The criminal trial commenced on February 17, 2009, and concluded the next day after he entered his guilty plea.

Because the criminal trial has concluded, Brown's motion for a continuance is DENIED. However, in light of Brown's *pro se* status and the fact he has not yet been sentenced, the Court will allow him an extended period of time in which to submit an amended complaint. If Brown wishes to amend his complaint in accordance with this Opinion and Order, he shall do so on or before June 1, 2009.

## Conclusion

For the reasons set forth above, the motion to quash service (Paper 15) and motion for summary judgment (Paper 18) filed by non-defendant John O'Connor are GRANTED. The motion to dismiss filed by defendant Catella (Paper 17) and motion for judgment on

14

the pleadings filed by defendant Birmingham (Paper 23) are also GRANTED.

Brown may amend his arrest-related claims against defendants Catella and Birmingham <u>on or before June 1, 2009</u>. Failure to file a timely amended complaint will result in the dismissal of all claims against Catella and Birmingham.

Brown's motion for a default judgment or, in the alternative, a continuance (Paper 24) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this day 17th of April, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge