UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| Joseph Brown, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:08-CV-201 |
| | : | |
| Joshua Catella, | : | |
| Matthew Birmingham, | : | |
| Trevor Carbo, | : | |
| and John O'Connor, | : | |
| Defendants. | : | |

OPINION AND ORDER
(Papers 34, 35 and 39)

Plaintiff Joseph Brown, proceeding *pro se*, claims that while being arrested in 2006 he was subjected to threats and verbal harassment by the arresting officers. Brown was subsequently convicted of a drug-related offense. He brings his current claims under the Fifth, Eighth, and Fourteenth Amendments, and is seeking $2 million in damages.

Previously, the Court granted motions to dismiss filed by defendants Catella and Birmingham, but allowed Brown leave to amend his complaint. Instead of amending the complaint, Brown has moved for reconsideration of the Court's order. That motion, along with Brown's motion for recusal, is currently before the Court.

Also pending is a motion by defendants Carbo and O'Connor for dismissal of all claims brought against them in their official capacities. For the reasons set forth below, the motion to dismiss is GRANTED and Brown's motions are DENIED.

Factual Background

The complaint alleges that at approximately 4:00 p.m. on July 28, 2006, four members of the Vermont Drug Enforcement Task Force ("VDTF") arrested Brown in a parking lot in Barre, Vermont. Brown claims that "[m]embers of the VDTF team rushed plaintiff's vehicle with their guns drawn wearing black uniforms while donning masks that hid their facial identities . . . ." In "the heat of plaintiff's arrest," Brown was allegedly "called a 'nigger' by one of the arresting officers." The officer also called him "an 'asshole'" and made reference to having "his 'f-ing' brains blown out." Brown further alleges that he "received minor cuts and abrasions as a result of being thrown out of his vehicle at gunpoint." (Paper 5 at 3-4).

Brown suspects that it was defendant O'Connor who made the offensive statements. He bases his suspicion upon O'Connor's alleged history of "misconduct allegations of racial profiling charges and allegations of racial discrimination towards African-Americans . . . ." Id. at 6. Defendant Carbo, an agent with the Drug Enforcement Agency ("DEA"), is accused of failing "to set up policies to help guide subordinates' conduct so that violations of plaintiff's constitutional and statutory rights did not occur as they did." Id. at 5. Because the arresting officers were all masked at the time of the arrest, the complaint leaves open the

2

possibility that any of them could have uttered the offensive and abusive statements.

Brown's criminal case went to trial on February 17, 2009. United States v. Lavandier, *et al.*, File No. 2:06-CR-82. On February 18, 2009, he entered into a Plea Agreement with the government and pled guilty to one count of aiding and abetting possession with intent to distribute cocaine. On May 22, 2009, Chief Judge Sessions sentenced Brown to time served followed by three years of supervised release.

## Discussion

I. Motion to Dismiss

The first motion before the Court seeks the dismissal of all official capacity claims brought against defendants Carbo and O'Connor. O'Connor is a DEA agent, while Carbo was reportedly a deputized DEA Task Force Officer. Carbo is identified in the complaint as a DEA agent.[1]

A damages action against federal officers in their official capacities is essentially a suit against the United States. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d

---

[1] Brown brings his claims under 42 U.S.C. § 1983. Section 1983 does not apply to suits against federal officials. Dotson v. Griesa, 398 F.3d 156, 162 (2d Cir. 2005) (citing Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.4 (2d Cir. 1991)). However, because the complaint is brought *pro se*, the Court will construe the claims against these defendants as brought pursuant to § 1983's federal counterpart, Bivens v. Six Unknown Name Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

Cir. 1994). Such suits are barred under the doctrine of sovereign immunity unless that immunity is waived. Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484-86 (1994); Robinson, 21 F.3d at 510 (2d Cir. 1994). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed" by statute. United States v. Mitchell, 445 U.S. 535, 538 (1980) (internal citations omitted); United States v. King, 395 U.S. 1, 4 (1969). "In the absence of clear Congressional consent, then, there is no jurisdiction in . . . any [ ] court to entertain suits against the United States." Mitchell, 445 U.S. at 538.

Brown has not established that the federal government waived its sovereign immunity with respect to his constitutional claims. Nor can he, since the United States has not waived its immunity in cases alleging constitutional tort claims for money damages. See Owusu v. Fed. Bureau of Prisons, 2003 WL 68031 (S.D.N.Y. Jan. 7, 2003); see also Keene Corp. v. United States, 700 F.2d 836, 845 n.13 (2d Cir. 1983); Drance v. Simpson Thacher & Bartlett, 1997 WL 442071, at *4 (S.D.N.Y. Aug. 5, 1997) ("It is well-established, however, that the United States has not waived its sovereign immunity for claims alleging constitutional violations.") (citing Meyer, 510 U.S. at 475-79). All damages

claims brought against Carbo and O'Connor in their official capacities are, therefore, DISMISSED.[2]

The motion to dismiss further submits that Brown's claims under 18 U.S.C. § 242 are misplaced, as that statute does not provide a private cause of action. Because 18 U.S.C. § 242 is a criminal statute with no private right of action, Brown's claims under that statute are DISMISSED. See Robinson, 21 F.3d at 511; Dugar v. Coughlin, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985).

## II. Motion For Reconsideration

Next is Brown's motion for reconsideration of the Court's order dismissing claims against defendants Catella and Birmingham, with limited leave to amend. Brown contends that the Court mischaracterized his injuries, and erred in finding that the complaint did not support his equal protection and due process claims. Brown also makes reference, for the first time, to a claim for excessive force.

Since the Federal Rules of Civil Procedure do not expressly provide for motions to reconsider, such an application may be

---

[2] In addition to his claims for damages, Brown asks the Court to declare that the defendants acted unlawfully. The Court reads this as a request for a declaration of liability, rather than a prayer for a declaratory judgment. Indeed, a claim for declaratory relief cannot rely upon past injury alone. See, e.g., McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 284 (2d Cir. 2004); see also City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983). Accordingly, the Court will not address the question of whether the government's sovereign immunity applies to a complaint that seeks declaratory relief.

construed as a motion to alter or amend judgment under Rule 59(e) or Rule 60(b).  See Osterneck v. Ernst & Whinney, 489 U.S. 169, 174 (1989).  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Reconsideration motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2617 n.5 (2008).

Brown's motion asks the Court to reconsider a motion that, initially, he failed to oppose.  The Court nonetheless conducted its own review of the law as required.  See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  The motion for reconsideration is, therefore, Brown's first attempt to provide a response.

Although the motion for reconsideration adopts its topic headings from the Court's Opinion and Order, Brown introduces concepts and case law that were not raised previously.  The most obvious example is his contention that the defendants used excessive force when they arrested him.  He makes at least two separate references to "excessive force," (Paper 35 at 3 and 7),

6

and argues that the level of force used was unnecessary. "Plaintiff did not provoke any attack or pose any threat. He was not aggressive or violent. He was not in possession of a weapon of any kind. He did not refuse to follow the defendants' instructions. Nor was he attempting or trying to flee." Id. at 2. None of these facts is set forth in the complaint. Indeed, there is no reference in the complaint to either "excessive force" or the Fourth Amendment.

The focus of the complaint is the "hate crime" allegedly perpetrated by the defendants when they used threats and a racial epithet. Brown makes passing reference to having received "minor cuts and abrasions," but his primary claim is summarized in the complaint as follows:

> The officer(s) who called plaintiff a nigger demonstrated the behavior that was maliciously and sadistically used for the very purpose of causing harm. As to call someone a "nigger" is clearly indicative of a hate crime. This behavior was outrageous, unprofessional, intentional and violated plaintiff's Fifth, Eighth and Fourteenth Amendments [sic] of the United States Constitution and Civil Rights of plaintiff protected by statute 18 U.S.C. § 242.

(Paper 5 at 6). Related claims pertaining to supervisors again assert that proper training and supervision would have prevented "such behavior." Id. at 6; see also id. at 4 ("Plaintiff informed both defendants Catella and Birmingham of the racial aspersions and both officers ignored him and failed to address it with the plaintiff.").

7

Brown's motion cites a series of Eighth Amendment cases to support his claims that the physical injuries he suffered are actionable. The Court first notes that the Eighth Amendment applies post-conviction, whereas arrest-related claims are analyzed under the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 295 n.10 (1989). Furthermore, Brown's citations involved injuries that were arguably worse than those he alleges in his complaint. See Hudson v. McMillan, 503 U.S. 1, 9-10 (1992) (bruises, swelling, loosened teeth, cracked dental plate); Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994) (permanent scarring and numbness from overly tight restraints); Griffen v. Cripen, 193 F.3d 89, 91-92 (2d Cir. 1999) (bruised shin and swelling over knee). He also cites cases involving threats by correctional officers, none of which involved circumstances even remotely similar to a drug-related arrest. See Northington v. Jackson, 973 F.2d 1518, 1522-24 (10th Cir. 1992); Burton v. Livingston, 791 F.2d 97, 100-01 (8th Cir. 1986).

Under the heading of "Plaintiff's Equal Protection Violation," Brown again cites excessive force cases and makes reference to the Rodney King case in Los Angeles. (Paper 35 at 4-5). Significantly, he does not address the line of cases cited in the Court's opinion pertaining to the use of racial epithets and/or threats by arresting officers. Nor does he rebut the

authority cited by the Court on the issue of supervisor liability. Id. at 5-6.

In sum, Brown's motion for reconsideration offers new arguments, and new facts, that were not previously presented to the Court. His motion also focuses on the amount of force used and the injuries suffered, shifting away from the epithets and threats that are the centerpiece of his complaint. The Court therefore finds that Brown has not met the "strict" standard for reconsideration, and his motion is DENIED. Shrader, 70 F.3d at 257.

III. Motion For Recusal

Brown has also filed an "Affidavit To Recuse" and motion to disqualify in which he claims that the Court has a conflict of interest. The alleged conflict arises, in part, out of a proceeding in which Brown and several other criminal defendants challenged the Court's method of selecting juries. Because the issue was presented in a series of criminal cases, both of Vermont's district judges presided. The Court ultimately found that its selection process was not unlawful. United States v. Brown, File No. 2:06-CR-82 (Paper 152).

Brown contends that in the instant case, the Court has shown bias when it denied his requests for appointment of counsel and a continuance, and when it granted the previous motion to dismiss. (Paper 39). He further speculates that the source of this bias

is the Court's "relationship" with the defendant law enforcement officers "whom he has [ ] worked with for years." (Paper 39 at 1).

Brown submits his motion under 28 U.S.C. § 144. Because the statutory language in § 144 and 28 U.S.C. § 455(b)(1) is similar and the scope of both is identical, courts have concluded that they should be construed together. See Apple v. Jewish Hosp. & Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987). Under both, the recusal standard is "whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." Id.

The scope of a recusal inquiry "is commonly limited to those circumstances in which the alleged partiality stems from an extrajudicial source." United States v. Carlton, 534 F.3d 97, 100 (2d Cir. 2008) (citation omitted). Accordingly, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994); LoCascio v. United States, 473 F.3d 493, 495-96 (2d Cir. 2007). As a result, "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky, 510 U.S. at 555.

For relief, Brown asks that "a conflict-free magistrate judge or another circuit judge [ ] be appointed to preside over this case." (Paper 39 at 1). It is well established, however, that "[r]ecusal motions should not be used as strategic devices to judge shop . . . and [thus] there is a substantial burden on the moving party to show that the judge is not impartial." McCann v. Commc'ns Design Corp., 775 F. Supp. 1506, 1522 (D. Conn. 1991) (internal quotations omitted). Furthermore, "[i]t is vital to the integrity of the system of justice that a judge not recuse himself on unsupported, irrational or highly tenuous speculation." Id. at 1523.

Brown offers nothing more than a series of unfavorable rulings and an unsubstantiated theory of bias to support his request for recusal. Indeed, his speculation that the Court has a bias toward law enforcement is entirely unfounded. A reasonable person reviewing the Court's conduct in this case would not find that its "impartiality might reasonably be questioned," Apple, 829 F.2d at 333, and the motion to disqualify is DENIED.

## Conclusion

For the reasons set forth above, the motion to dismiss filed by defendants Carbo and O'Connor (Paper 34) is GRANTED. Brown's motion for reconsideration (Paper 35) and motion to disqualify (Paper 39) are DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 14th day of December, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge