```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

Joseph Brown,                      :
       Plaintiff,                  :
                                   :
       v.                          :     File No. 1:08-cv-00201-jgm
                                   :
Joshua Catella, Matthew            :
Birmingham, Trevor Carbo,          :
and John O'Connor,                 :
       Defendants.                 :
```

<u>OPINION AND ORDER</u>
(Doc. 46)

Plaintiff Joseph Brown, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Brown claims that while being arrested in 2006, he was subjected to threats, verbal harassment and abuse by the arresting officers.  A motion to dismiss defendants Joshua Catella and Matthew Birmingham was granted previously.  A motion to dismiss official capacity claims seeking damages against defendants Trevor Carbo and John O'Connor was also granted.

Now pending before the Court is a motion to dismiss the individual capacity claims being brought against Carbo and O'Connor.  The motion is unopposed.  For the reasons set forth below, the motion to dismiss is GRANTED with leave to amend.

<u>Factual Background</u>

For the limited purpose of addressing the motion to dismiss, the facts alleged in the complaint will be accepted as true.

1

These facts have been set forth in prior Orders of the Court, and are largely repeated here.

At approximately 4:00 p.m. on July 28, 2006, four members of the Vermont Drug Enforcement Task Force ("VTDF") arrested Brown in a parking lot in Barre, Vermont. The complaint claims that "[m]embers of the VDTF team rushed plaintiff's vehicle with their guns drawn wearing black uniforms while donning masks that hid their facial identities . . . ." In "the heat of plaintiff's arrest," Brown was allegedly "called a 'nigger' by one of the arresting officers." The officer also called him "an 'asshole'" and made reference to having "his 'f-ing' brains blown out." Brown further alleges that he "received minor cuts and abrasions as a result of being thrown out of his vehicle at gunpoint." (Paper 5 at 3-4).

Brown initially suspected that it was defendant O'Connor who made the offensive statements. He based his suspicion upon O'Connor's alleged history of "misconduct allegations of racial profiling charges and allegations of racial discrimination towards African-Americans . . . ." Id. at 6. John O'Connor of the South Burlington Police Department was served, and soon thereafter moved for summary judgment on the ground that he was not involved in Brown's arrest.

The Court subsequently determined that service upon Officer O'Connor was simply a matter of mistaken identity, as there is

also a DEA agent named John O'Connor in the Burlington area. The DEA agent has now been served, and Brown has conceded that the current defendant "may not be the same racist John O'Connor who has had many racial problems when arresting African-Americans." (Doc. 36 at 1). The Court takes judicial notice of the fact that Officer O'Connor of the South Burlington Police Department was involved in a federal civil case in which he was accused of racial profiling. <u>Diamond v. O'Connor</u>, File No. 2:05-CV-279. Brown has not amended his complaint to bring allegations specific to DEA Agent O'Connor.

Brown's criminal case, in which he was charged with drug-related offenses, went to trial on February 17, 2009. <u>United States v. Lavandier, *et al.*</u>, File No. 2:06-CR-82. On February 18, 2009, he entered into a Plea Agreement with the government and pleaded guilty to one count of possession with intent to distribute cocaine. On May 22, 2009, Chief Judge Sessions sentenced Brown to time served followed by three years of supervised release.

<u>Discussion</u>

I.   <u>Untimely Service</u>

In their motion to dismiss, defendants Carbo and O'Connor first argue that they were not served in a timely manner. The complaint was filed in September 2008, and these defendants were not served until January 2010. As noted above, initially the

wrong John O'Connor was served, and that had to be rectified. It is not clear why service upon Carbo was delayed. The defendants concede that Carbo and O'Connor have now been served.

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure" to serve, the district court is required to grant an "appropriate" extension of time. Id. District courts also have discretion to enlarge the 120-day period in the absence of good cause. See Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007).

Brown was incarcerated when he filed his complaint. The Second Circuit has held that a *pro se* prisoner proceeding *in forma pauperis* is "entitled to rely on service by the U.S. Marshals." Romandette v. Weetabix Co., Inc., 807 F.2d 309, 311 (2d Cir. 1986). While *pro se* plaintiffs are required to provide the Marshals Service with information necessary to identify defendants, see Sellers v. United States, 902 F.2d 598, 602 (7th Cir. 1990), there is no claim here that Brown's information was lacking in this regard once the mistake about O'Connor was cured. Furthermore, the fact

4

that Brown was not incarcerated for the entire time that service was being attempted does not make his reliance upon the Marshals unreasonable.  See, e.g., Jaiyeola v. Carrier Corp., 242 F.R.D. 190, 192 (N.D.N.Y. 2007).  Accordingly, the responsibility for timely service rested "with the Marshals Service, not with [the plaintiff]."  Muhammed v. Coughlin, 1994 WL 68168, at *3 (S.D.N.Y. Mar. 1, 1994); see also Sidney v. Wilson, 228 F.R.D. 517, 523-24 (S.D.N.Y. 2005).

"[C]ourts have uniformly held that the Marshals' failure to effect service automatically constitutes good cause within the meaning of [Fed. R. Civ. P.] 4(m)."  Micolo v. Brennan, 2009 WL 742729, at *7 (E.D.N.Y. March 18, 2009).  Accordingly, the Court declines to dismiss this case on the basis of untimely service, and the defendants' motion to dismiss on this ground is DENIED.

II.   Construing the Complaint

The defendants next argue that Brown's claims under 42 U.S.C. § 1983 are misplaced because he is suing federal agents.  Section 1983 does not apply to suits against federal officials.  Dotson v. Griesa, 398 F.3d 156, 162 (2d Cir. 2005) (citing Kingsley v. Bureau of Prisons, 937 F.2d

26, 30 n.4 (2d Cir. 1991)).  Nonetheless, the Court has previously stated that because Brown is proceeding *pro se*, it will construe his claims against the defendants as brought pursuant to § 1983's federal counterpart, Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).  (Doc. 41 at 3 n.1); see Sutera v. Transp. Sec. Admin., 2010 WL 1729095, at *3 (E.D.N.Y. Apr. 29, 2010) ("[t]he court may construe section 1983 claims against federal actors based on the theory of Bivens . . .") (citing Cuoco v. Moritsugu, 222 F.3d 99, 105 (2d Cir. 2000)).  The Court will continue to construe the complaint as a Bivens action, and will not dismiss on the ground that Brown has instead cited § 1983.

III.   Motion to Dismiss

    Defendants Carbo and O'Connor also move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Brown's pleading does not satisfy the requirements of Fed. R. Civ. P. 8.  When presented with a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in Brown's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  That said, the rule that all facts must be accepted as true "is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Furthermore, "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Indeed, the Supreme Court has held that a complaint's allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, Brown must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. If Brown "[has] not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. The "plausibility" standard does not alter the Court's longstanding practice of construing *pro se* complaints liberally. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The defendants first argue that Brown's claims "lack facial plausibility." (Doc. 46 at 9). With respect to defendant Carbo, Brown accuses him of having participated in the 2006 arrest. Brown also suggests that Carbo had supervisory duties, alleging that Carbo failed to "set up policies to help guide subordinates' conduct so that violations of plaintiff's constitutional and statutory rights did not occur as they did." (Doc. 5 at 5). Brown further alleges that Carbo knew of O'Connor's alleged "past misconduct . . . towards African-Americans, but failed to

7

take appropriate action to remedy it, to investigate it, and to correct it, preventing it from happening or recurring again." Id. at 6. Again, it is not clear that these allegations with regard to O'Connor pertain to O'Connor the DEA Agent, or to O'Connor the South Burlington Police Officer.

As to claims brought again O'Connor himself, he is accused of having participated in Brown's arrest and of having used a racial epithet. (Doc. 5 at 5) ("O'Connor . . . acted in such a way that shocked the conscience by calling plaintiff, to wit, a 'nigger' [] during plaintiff's arrest.").

The Court will first address Brown's claims that the defendants were personally involved in his arrest, and then proceed to claims of supervisor liability being brought against Carbo.

   A.  Direct Involvement

Giving the complaint the required liberal reading, the allegation that each of the defendants was masked means that either O'Connor or Carbo might have used a racial epithet and abusive language. The first question before the Court is whether, assuming the truth of the allegations, the use of such

8

words in the heat of a drug-related arrest violated Brown's constitutional rights.

As the Court has noted previously in this case, the crux of Brown's complaint is that the defendants committed a "hate crime." Brown makes passing reference to having received "minor cuts and abrasions," but his primary claim is summarized in the complaint as follows:

> The officer(s) who called plaintiff a nigger demonstrated the behavior that was maliciously and sadistically used for the very purpose of causing harm. As to call someone a "nigger" is clearly indicative of a hate crime. This behavior was outrageous, unprofessional, intentional and violated plaintiff's Fifth, Eighth and Fourteenth Amendments [sic] of the United States Constitution and Civil Rights of plaintiff protected by statute 18 U.S.C. § 242.

(Paper 5 at 6); see also id. at 3 ("This is a hate crime as the plaintiff experience[d] racial indifference, discrimination, prejudice, libel and slander at the hands of the defendants . . . .").

Courts have held that the use of offensive or abusive language generally does not violate an arrestee's constitutional rights. See, e.g., Miro v. City of New York, 2002 WL 1163580, at *5 (S.D.N.Y. June 3, 2002) ("An arresting officer's use of racial epithets does not constitute a basis for a § 1983 claim."); Harris v. Keane, 962 F. Supp. 397, 406 (S.D.N.Y. 1997); Patton v. Przybylski, 1986 WL 6088, at *2 (N.D. Ill. May 15, 1986)(claim of verbal abuse by police officers who allegedly made derogatory and

9

insulting racial comments during arrest does not rise to the level of a constitutional deprivation), aff'd, 822 F.2d 697 (7th Cir. 1987); Keyes v. City of Albany, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984).  "Only in rare circumstances in which the threats involved were 'inspired by malice rather than merely careless or unwise zeal so that [they] amount to an abuse of official power that shocks the conscience' have courts recognized exceptions to this rule."  Mroz v. City of Tonawanda, 999 F. Supp. 436, 465 (W.D.N.Y. 1998) (quoting Beal v. City of New York, 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994)); see also Hopson v. Fredericksen, 961 F.2d 1374, 1378-79 (8th Cir. 1992) (verbal threats do not amount to constitutional violations unless they rise to the level of "brutal and wanton act of cruelty").

Here, there is no suggestion that Carbo acted with malice toward Brown.  As to O'Connor, the initial claim was that he had acted in a discriminatory manner in the past.  Based upon this allegation, the complaint invites an inference that O'Connor acted with malice during Brown's arrest.  Brown has since acknowledged, and the Court's records suggest, that those allegations of past conduct likely pertained to John O'Connor the police officer, and not John O'Connor the DEA agent.  (Doc. 36 at 1-2).  Absent facts pertaining to John O'Connor of the DEA, there

is no support for a claim that he acted with any form of malice.[1] Without such an allegation, "the use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a [constitutional] claim." Keyes, 549 F. Supp. at 1155.

Furthermore, several courts have required associated physical harm before finding a constitutional violation. See, e.g., Brown v. Croce, 967 F. Supp. 101, 104 (S.D.N.Y. 1997) (racial slur and two slaps to face did not violate constitutional rights); cf. McCann v. Coughlin, 698 F.2d 112, 126 (2d Cir. 1983) (claim that prison guard called plaintiff names did not allege any appreciable injury and was properly dismissed). Brown admits in his complaint that his injuries were minor, and that they were the result of his removal from a vehicle by police. This type of incidental injury, even when linked to the alleged racial and threatening statements, does not support a valid claim. Cf. Williams v. City of New York, 2007 WL 2214390, at *12 (S.D.N.Y. July 26, 2007) (characterizing similar injuries as "de minimis").

The complaint makes reference to due process violations, and as the defendants properly note, Brown's reference to a "shock the conscience" standard implies a substantive due process claim. See County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

---

[1] As discussed below, the Court will allow Brown time in which to amend his complaint to set forth facts that pertain to DEA Agent O'Connor.

"Substantive due process protects against government conduct that deprives people of protected rights and truly 'shocks the conscience'. . . ." Phillips v. DeAngelis, 571 F. Supp. 2d 347, 358 (N.D.N.Y. 2008) (quoting Lewis, 523 U.S. at 846). The Supreme Court has determined that substantive due process protects against only "the most egregious official conduct." Lewis, 523 U.S. at 846.

Several circuit courts have held that verbal threats and harassment by a government official do not generally violate substantive due process. King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir. 1997); Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995); Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). As one district court recently concluded, "[i]n light of this caselaw treating verbal abuse, even vile language and racial epithets, as insufficient to constitute a constitutional violation . . . it appears that the alleged conduct by the [arresting officer] falls into the category of misconduct for which there is no available constitutional remedy." Woods v. Valentino, 511 F. Supp. 2d 1263, 1285 (M.D. Fla. 2007) (concluding that plaintiff might have a tort claim).

In addition to their claim of inadequate pleading under Rule 8, the defendants argue that they are entitled to qualified immunity. Qualified immunity is an affirmative defense designed to protect public officials "not just from liability but also

from suit . . . thereby sparing [them] the necessity of defending by submitting to discovery on the merits or undergoing a trial." X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65 (2d Cir. 1999). Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "A police officer who has an objectively reasonable belief that his actions are lawful is entitled to qualified immunity." Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 433 (2d Cir.2009).

Given the state of the law in this area, it cannot be said that the defendants violated Brown's clearly established constitutional right to substantive due process. Indeed, the case law indicates the unwillingness of courts across the country to find a due process violation where an arresting officer, or other public official, uses offensive or threatening language. Accordingly, this Court finds that the defendants are entitled to qualified immunity on the substantive due process claim.

Brown also claims that his equal protection rights were violated. The facts alleged in the complaint are again insufficient to support such a claim. The Equal Protection Clause of the Fourteenth Amendment guarantees individuals the right not to be treated differently than others who are similarly

situated.  See, e.g., Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  In order to state an equal protection claim, Brown must "allege that a government actor intentionally discriminated against him on the basis of his race." Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir.2000), cert. denied, 534 U.S. 816 (2001).  He must also allege "the existence of a similarly situated group of non-minority individuals that were treated differently[.]"  Id.

Even assuming that the allegations against defendant O'Connor are still valid, and that there is factual support for a claim of intentional discrimination, Brown does not allege that he was treated differently from others similarly situated.  His equal protection claim thus fails as a matter of law.  See also Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999) (holding that officer's use of racial epithet in effecting arrest will not, by itself, constitute equal protection violation).[2]

Finally, Brown brings claims under 18 U.S.C. § 242. It is well settled that 18 U.S.C. § 242 is a criminal statute with no private right of action.  See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir.

---

[2] Brown also brings claims under the Eighth Amendment.  The Eighth Amendment, however, is only implicated after there has been an adjudication of guilt.  See Bell v. Wolfish, 441 U.S. 520, 535, n.16 (1979).

1994); Tarhaqa Allen v. New York City Police Dep't, 2010 WL 1790429, at *5 (May 5, 2010); Joyner-El v. Giammarella, 2010 WL 1685957, at *3 (S.D.N.Y. Apr. 15, 2010); Dugar v. Coughlin, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985). Brown's claims under that statute are therefore DISMISSED.

   B.   Supervisor Liability

Again reading the complaint liberally, Brown may be alleging that defendant Carbo is liable as a supervisor. In Ashcroft v. Iqbal, the Supreme Court made clear that Bivens does not impose supervisor liability on the basis of *respondeat superior*; rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual action, has violated the constitution." 129 S. Ct. at 1948-49.

Prior to Iqbal, the law in the Second Circuit was that a supervisor could only be held liable if the plaintiff demonstrated that he had 1) directly participated in the challenged conduct; 2) failed to remedy the violation after learning of it through a report or appeal; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinate who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring.

15

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); see Ajaj v. MacKechnie, 2008 WL 3166659, at *5 (S.D.N.Y. Aug. 5, 2008) (applying Colon factors in Bivens action).  District Courts in this circuit are divided as to whether all of the Colon factors survived the Supreme Court's ruling in Iqbal.  See Rahman v. Fischer, 2010 WL 1063835, at *4 (S.D.N.Y. March 22, 2010) (collecting cases); Sash v. United States, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (same).

Assuming that all of the Colon categories are still valid, the complaint nonetheless fails to provide sufficient facts for a claim of supervisor liability.  First, there is no allegation that Carbo, as a supervisor, had direct control over O'Connor during the arrest.  In fact, the complaint suggests that defendants Catella and Birmingham were the supervisors, and that Carbo operated under their command.  (Doc. 5 at 5) ("[Carbo] was under the supervision and direction of the above-mentioned defendants . . . .").

Nor does Brown specifically allege that Carbo, as a member of the VDTF, was responsible for O'Connor's training.  Instead, the complaint offers general and conclusory allegations about a failure to develop "policies to help guide subordinates."  Moreover, there is no claim that a DEA or VDTF policy allowed O'Connor to act as he did.

Assuming that Carbo was a supervisor, it could be argued that the fourth and fifth Colon factors apply, namely, that Carbo was aware of past unconstitutional conduct and was grossly negligent in managing a subordinate. The third prong may also be involved, as courts have held that "[a] policy or custom may be inferred from acts or omissions of supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff." Eng v. Coughlin, 684 F. Supp. 56, 65 (S.D.N.Y. 1988); Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) ("deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate").

The Second Circuit has defined gross negligence as "an indifference to present legal duty and utter forgetfulness of legal obligations." Doe v. New York City Dep't of Soc. Servs., 649 F.2d 134, 143 n.4 (2d Cir. 1981). Thus, defendants are grossly negligent when they "[have] reason to know of facts creating a high degree of risk of physical harm to another and deliberately [act] or [fail] to act in conscious disregard or indifference to that risk." Poe v.

Leonard, 282 F.3d 123, 140, 145 (2d Cir. 2002) (dismissing claim against state trooper's former supervisor on grounds of qualified immunity).

Here, the facts in the complaint do not suggest that Carbo should have believed that there was a "high degree of risk" that John O'Connor the DEA agent would violate the constitutional rights of a suspect during a drug-related arrest. Furthermore, for the reasons discussed above, the facts alleged in the complaint do not state a claim of unconstitutional conduct. Therefore, even if the Court assumes that Carbo had some supervisory responsibility with respect to O'Connor's training and his behavior during the arrest, the complaint does not set forth a valid claim of supervisor liability.

IV.  Leave to Amend

When a complaint has been filed *pro se*, district courts "generally should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). When the Court granted the motion to dismiss defendants Catella and Birmingham from the case, it allowed Brown time in which

18

to amend his claims against these defendants, concluding that "with additional factual support, he may have a valid claim." (Doc. 33 at 8). The deadline for amending those claims has now passed, and no amended complaint has been filed. The Court warned that a failure to file a timely amended complaint "will result in the dismissal of all claims against Catella and Birmingham." Id. at 15. Consequently, the claims against Catella and Birmingham are hereby DISMISSED.

With respect to Carbo and O'Connor, the Court again finds that with additional factual support, particularly with respect to O'Connor the DEA agent, Brown may be able to state a valid claim. Accordingly, leave to amend is GRANTED, and Brown may filed an amended complaint on or before August 13, 2010. Failure to file a timely amended complaint will result in dismissal of all claims against the remaining defendants, Carbo and O'Connor, with prejudice.

## Conclusion

For the reasons set forth above, the motion to dismiss the claims brought against defendants Carbo and O'Connor in their individual capacities (Doc. 46) is GRANTED. Brown may amend his claims against these defendants on or before

<u>August 16, 2010</u>.  Failure to file a timely amended complaint will result in the dismissal of this case with prejudice.

All claims against defendants Catella and Birmingham are DISMISSED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 26th day of July, 2010.

                                        /s/ J. Garvan Murtha
                                        Honorable J. Garvan Murtha
                                        Senior United States District Judge